COOLEY LLP
Michael A. Attanasio (151529)
(mattanasio@cooley.com
M. Ray Hartman III (211205)
(rhartman@cooley.com
Megan L. Donohue (266147)
(mdonohue@cooley.com
4401 Eastgate Mall
San Diego, CA  92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

Attorneys for Plaintiff
Ra Medical Systems, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ra Medical Systems, Inc., | Case No.  19-cv-00920-AJB-MSB |
| Plaintiff, | **PLAINTIFF RA MEDICAL'S SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| v. | |
| Uri Geiger, individual, Strata Skin Sciences Inc. and Accelmed Growth Partners, L.P., | |
| Defendants. | |

Plaintiff Ra Medical Systems, Inc. ("Plaintiff" or "Ra Medical") hereby brings this action against Defendants Uri Geiger ("Mr. Geiger"), Strata Skin Sciences Inc. ("Strata"), and Accelmed Growth Partners, L.P. ("Accelmed") (collectively "Defendants") based on Defendants' disparaging, false, and misleading statements to Ra Medical's financial partners and potential investors before, during, and after the company's initial public offering ("IPO") and, more recently, to current customers, which: 1) violates a prior settlement agreement, 2) violates the Lanham Act's prohibition on false advertising, 3) intentionally interferes with Ra Medical's contractual relations; 4) intentionally interferes with Ra Medical's prospective economic relations; and 5) is trade libel, and on that basis alleges as follows:

## INTRODUCTION

1.      In 2011, Ra Medical and Strata's predecessor in interest, PhotoMedex, Inc. ("PhotoMedex"), settling seven related cases involving complex intellectual property claims, false marketing claims, and disputes involving Ra Medical's FDA approvals, entered into an omnibus Settlement Agreement.  The parties released all claims and also entered into a non-disparagement agreement that broadly prohibits any statements regarding the FDA status of certain Ra Medical lasers or any purported false marketing.  Subsequently, Strata assumed the responsibilities of the Settlement Agreement.

2.      Last year, Mr. Geiger, as an agent of Strata (successor in interest to PhotoMedex) and as Managing Partner of Accelmed, breached the Settlement Agreement and disrupted the hard-fought peace by making disparaging and independently actionable false statements to Ra Medical's banking partners and the market at large, in an attempt to derail and devalue Ra Medical's IPO.

3.      These false statements had a substantial negative effect on Ra Medical's IPO, causing several key financial partners to back out of the IPO and delaying the IPO for several critical months.  These changes, which were caused by Mr. Geiger's disparaging, false, and misleading communications, substantially damaged Ra Medical.

4.      Since then, Strata has expanded its false and misleading communications, now making them directly to Ra Medical's customers, causing harm to Ra Medical's reputation, products, and sales.

## PARTIES

5.      Ra Medical develops life-saving and life-changing excimer medical lasers for use in the treatment of vascular and dermatological immune-mediated inflammatory diseases.  Ra Medical is a Delaware corporation whose principal place of business is in San Diego, California.

6.      Strata is a Delaware corporation whose principal place of business is in Horsham, Pennsylvania.  It is a successor in interest to PhotoMedex.

7.     Accelmed is incorporated or organized under the laws of the Cayman Islands.  Its principal place of business is in Herzliya Pituach, Israel.

8.     Mr. Geiger is an adult residing in Cresskill, New Jersey.  Mr. Geiger is the founder and Managing Partner of Accelmed, which is the primary shareholder of Strata, and is the Chairman of the Board of Directors of Strata.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over Count II of the Complaint, as the action arises under 15 U.S.C. § 1125(a), based on Defendant's false or misleading representations of fact in violation of the Lanham Act, § 43(a)(1)(B), with original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

10.    This Court also has supplemental jurisdiction over Counts I, III, IV and V under 28 U.S.C. § 1367(a), because these claims form part of the same case or controversy as Count II.

11.    Venue is proper in this Court because the action involves a breach of a prior Settlement Agreement between Ra Medical and Strata, as a successor in interest to PhotoMedex, which provides that the exclusive venue for such action is the United States District Court, Southern District of California.  *See* Exhibit A, Section 18.

12.    Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred within this judicial district, including the injuries suffered by Ra Medical.

13.    The Court has personal jurisdiction over Defendants because they regularly do business within the state of California and purposefully availed themselves of the forum, including making disparaging and false statements to California residents to benefit Defendants' competing excimer business located in and operated out of California.  For instance, Strata operates an office in Carlsbad, California for its competing excimer laser product and sells its products throughout the state.  Mr. Geiger is the Chairman of the Board of Strata and the Managing Partner of Accelmed. Accelmed not only holds a majority ownership stake in Strata, it also holds ownership

in additional companies operating and located in California, including ValCare, Inc. On information and belief, Mr. Geiger is also on the Board of Directors of ValCare, Inc. Also, Defendants Strata and Mr. Geiger assumed the responsibilities of a contract negotiated and executed in California, which requires that the parties take certain actions within California and adhere to California law, entered into with Ra Medical, a California company. Further, Defendants' wrongful acts were expressly aimed at California. For instance, Strata's false statements were expressly directed at Ra Medical's California customers. Similarly, Mr. Geiger, as Managing Partner for Accelmed and an officer of Strata, made misrepresentations regarding Ra Medical's IPO to Ra Medical's banking partners and potential purchasers, including but not limited to, on information and belief, at least one partner located in San Diego, California employed by OppenheimerFunds.

## FACTUAL ALLEGATIONS

### Settlement and Strata's assumption of the obligations therein

**14.** From 2003 through 2011, Ra Medical and PhotoMedex litigated numerous claims regarding the parties' intellectual property, marketing, advertising and Ra Medical's FDA approvals, resulting in seven separate cases being filed. Much of this litigation involved claims by PhotoMedex that Ra Medical's products exceeded its FDA clearances.

**15.** On May 13, 2011, Ra Medical and PhotoMedex executed an omnibus Settlement Agreement to resolve all of those claims. *See* Exhibit A. Specifically, the Settlement Agreement released claims "which do exist or may in the future exist arising out of or relating to facts, events, occurrences, or omissions up to and including the date this Agreement is fully executed . . . brought or which could have been brought in the [l]itigation or claims which relate to actual or alleged acts of infringement by a Party hereto of any patents, foreign or domestic, which are owned by or licensed to the other Party hereto and which have been issued or are pending as of the Effective Date . . . ." *See id.*, Section 2. It also provided a non-disparagement clause to prevent this type of

conduct going forward, which provides "[n]o Party shall make, or encourage or cause others to make, any statement or allegation, written or verbal, to any third party including, without limitation, a customer of the other Party or a governmental agency, concerning or relating to the FDA status of Ra Medical's current lasers, Dean Irwin as an inventor of the first FDA-approved excimer laser for dermatology, or false marketing known to be untruthful." *Id.*, Section 7.

16.    In June 2015, Mela Sciences, Inc. ("Mela") purchased certain assets from PhotoMedex, including its XTRAC dermatology business.  The XTRAC laser products were, in part, the subject of the claims settled between Ra Medical and PhotoMedex. The resulting Asset Purchase Agreement addresses the Settlement Agreement, and, on information and belief, requires Mela to assume the responsibilities reflected in the Settlement Agreement.

17.    In December 2015, Mela was rebranded as Strata.

## Competitors in laser treatments

18.    Ra Medical has two laser systems on the commercial market, DABRA for the treatment of vascular disease and Pharos for the treatment of dermatological diseases.  Both use the same core technology and utilize a similar excimer laser.

19.    Ra Medical's Pharos laser system has been marketed since 2004 and is designed for the treatment of inflammatory skin conditions.  It is FDA-cleared to treat psoriasis, vitiligo, atopic dermatitis, and leukoderma.

20.    In May 2017, Ra Medical received FDA 510(k) clearance to market the DABRA laser system and single-use DABRA catheter in the U.S. for "crossing chronic total occlusions in patients with symptomatic infrainguinal lower extremity vascular disease," describing the intended use as "[f]or use in ablating a channel in occlusive peripheral vascular disease."  Ra Medical's DABRA laser system is used by physicians as a tool in the treatment of peripheral artery disease, a form of peripheral vascular disease.  These treatments are commonly referred to by the medical community as atherectomy.

21.     Ra Medical's product competitors include companies owned by Accelmed and guided by Mr. Geiger.

22.     Strata produces the XTRAC laser system, which like Pharos, treats dermatological diseases, including vitiligo.  In March 2018, Accelmed filed paperwork with the Securities and Exchange Commission stating that it intended to purchase 58.3% of Strata's common stock upon the closing of a transaction between Accelmed and Strata.  On May 29, 2018, the transaction closed, and Mr. Geiger immediately became Chairman of Strata's Board of Directors.

23.     Eximo Medical is an Israeli company owned in whole or in part by Accelmed.  In October 2018, it obtained FDA clearance for a laser system for treatment of peripheral artery disease, including atherectomy for blockages.  While its B-laser system and DABRA currently have different FDA clearances, they both are used by physicians to treat artery blockages.

## Ra Medical prepares to go public

24.     In December 2017, Ra Medical began preparing to go public on the New York Stock Exchange.

25.     The IPO process is time and resource intensive, requiring that the company work closely and cooperatively with financial partners, who serve as intermediaries between the company and investors.  Financial institutions considering underwriting an IPO perform extensive due diligence on the offering company's products, finances, and potential weaknesses.  For an IPO for a medical device company like Ra Medical, it is crucial that underwriters have specialized expertise in the field to appropriately guide the investing community and generate support.

26.     Initially, Ra Medical partnered with UBS Investment Bank ("UBS"), to serve as the lead bank as it pursued its IPO.  In December 2017, Ra Medical and UBS entered into a contract, whereby UBS agreed to act as the lead bookrunning manager for the proposed IPO.  The lead bookrunning manager coordinates the issuance of the new IPO shares and is generally the firm that serves as lead underwriter.  The contract

specified that UBS would fill this role for one year or until the IPO closed.  It also gave UBS a right of first refusal to act as a financial advisor to Ra Medical with regard to any sale involving the company.  Ra Medical and UBS intended that UBS would serve as the formal lead underwriter for its IPO through the close of the transaction, and it was described to the investing public as such.  In addition, as is common, Ra Medical also engaged other banks who would share in the risk for the offering, called the underwriting syndicate.  These banks are each allotted portions of the company offering.  Ra Medical tapped OppenheimerFunds to serve as a financial partner in the syndicate, as well as a number of other financial partners, including SunTrust, Cantor, and Nomura.  Because, as part of any IPO, these financial partners perform extensive due diligence on the offering company, their support during the entirety of the IPO process is an important indicator to the market of the overall condition of the company and the viability of the offering.

27.     Investment banks also employ research analysts.    They operate independently, and 25 days after the IPO closes, are permitted to produce reports analyzing the company and its newly offered shares.  These reports are relied on by the market to determine whether the shares of the newly public company are a good investment and the valuation of the shares going forward.

28.     Moreover, the IPO process primarily relies on banks, such as UBS and OppenheimerFunds, to sell the newly issued shares to prospective investors in the market.  Generally, this means that banks reach out to their established book of business in the particular sector and urge those individuals or entities to invest.  This process begins long before the shares are available for purchase on the market, to ensure that the IPO sells out quickly.  Thus, UBS and Oppenheimer would have already been discussing Ra Medical with prospective investors in the spring of 2018.

29.     As of March 21, 2018, Ra Medical fully expected UBS to lead its IPO and OppenheimerFunds to serve in the syndicate, and stated as much in its SEC filings.

30.     Ra Medical and its banking partners intended to close its public offering in July 2018, thereby gaining significant funding to support its sales and marketing efforts and taking advantage of a historically favorable market for IPO offerings.

### Mr. Geiger's campaign to disparage Ra Medical

31.     In or around this time period, Mr. Geiger began a campaign of disparaging and misleading statements to the marketplace about Ra Medical in an effort to undermine the company's IPO.

32.     Mr. Geiger initiated a misinformation campaign to the banks leading Ra Medical's offering, trying to persuade them to abandon the deal.  For instance, on May 22, 2018, Mr. Geiger emailed John Hagens of UBS, the banker leading the Ra Medical IPO, and made several false and misleading statements regarding Ra Medical. *See* Exhibit B.  In that email, Mr. Geiger misleadingly implied that Ra Medical faced impending patent infringement claims from Strata and/or Mount Sinai regarding Ra Medical's Pharos laser. In fact, any claims held by Strata had been expressly and irrevocably released as part of the 2011 Settlement Agreement.  Moreover, Mount Sinai has not brought any patent infringement claims against Ra Medical, despite having communicated with Ra Medical as early as 2006 about the patents and entering into an exclusive license with PhotoMedex, Strata's predecessor-in-interest, that same year.  As the Managing Partner of Accelmed, the soon-to-be majority owner of Strata's common stock, and pending Chairman of Strata's Board of Directors, Mr. Geiger would have known his statements, particularly regarding Strata's potential claims, were false.  Mr. Geiger would have also known that his statements would concern Ra Medical's banks in the IPO, as a successful patent claim by a Ra Medical competitor could significantly threaten the company's ability to market their products and, even if unsuccessful, would consume company resources in litigation.

33.     In addition, Mr. Geiger made several false statements regarding Ra Medical's DABRA laser and potential off-label marketing.  First, Mr. Geiger falsely implied that Ra Medical was encouraging physicians to improperly seek and receive

reimbursements for procedures using the DABRA device from government payors like the Centers for Medicare and Medicaid Services ("CMS").  *See* Exhibit B.  This is a serious accusation, suggesting Ra Medical and physicians could face liability for inducing improper government payments.  But Mr. Geiger's insinuation is entirely false.  First, physicians are not strictly limited to use of medical devices consistent with FDA indications if they determine that the device and procedure are medically appropriate for a particular patient.  Many physicians have determined that the DABRA laser system is appropriate to treat a variety of artery blockages.  Moreover, third-party health payers can reimburse a procedure performed by a device that is not cleared or approved for a specific indication if, again, the physician determines that the device and procedure are medically appropriate for a particular patient.  Indeed, CMS payments are predicated on the underlying treatment, *e.g.*, atherectomy for a blocked artery, not the device used to perform the treatment.  Second, Mr. Geiger falsely implied that Ra Medical's device works in only 10% of the population, stating "the FDA clearance is limited to CTO (which presents only at 10% of a[]trectomy cases)."  *Id.*  In fact, Ra Medical's FDA clearance describes DABRA's "Intended Use" as "[f]or use in ablating a channel in occlusive peripheral vascular disease."  This broader description of DABRA's FDA clearance, beyond chronic total occlusions, is omitted from Mr. Geiger's email altogether.  Physicians use DABRA on all types of plaque, not just chronic total occlusions, which are some of the most serious artery blockages.  Mr. Geiger, as the Managing Partner of Accelmed, is well acquainted with these issues as a result of ownership of the Eximo company and its B-laser products and, on information and belief, is aware that these statements are false or misleading.

**34.**   Mr. Geiger stated that the above issues "may result in underwrite[r] liability and effect your brand," transparently attempting to influence Ra Medical's lead bank to abandon the IPO.

**35.**   This is not a case of a single email.  Ra Medical has been informed, and on that basis alleges on information and belief, that Mr. Geiger sent communications like

the one he sent to Mr. Hagens to many other banking partners involved in Ra Medical's IPO, including OppenheimerFunds, as well as other banks who considered participation in the IPO.  For example, Ra Medical understands that Piper Jaffray, the bank that ultimately led Ra Medical's IPO, received similar communications from Mr. Geiger.  Moreover, Mr. Geiger expressly threatened to withhold future business from financial institutions who participated in the IPO.  For instance, on information and belief, Mr. Geiger informed OppenheimerFunds that if they continued with the Ra Medical IPO, he would in the future withhold his business.  Far from normal competition based on the merits of each company's products, Mr. Geiger engaged in a campaign of threats and intimidation against the syndicate banks and potential participants in the syndicate.

36.    Moreover, he sent the same message to multiple research analysts, in an attempt to influence their view of Ra Medical's business opportunity and impact their resulting reports to the marketplace.

37.    Mr. Geiger has compounded these false statements by further publishing them to the investing public.  For instance, after Ra Medical attempted to address Mr. Geiger's false statements via a preliminary letter outlining how his statements violated the Settlement Agreement to which Strata is bound, Mr. Geiger and Strata immediately published the dispute on the SEC's website.  In particular, Strata filed a Form 8-K and attached the entire complaint, including Mr. Geiger's email to UBS, which contained the false and misleading statements outlined above.  This filing was not required by the SEC, and filing the entire complaint, with Mr. Geiger's email, is never required in an SEC filing, and only serves to boost Defendants' false statements under the guise of legal action.

38.    And Mr. Geiger's campaign is still ongoing.  For instance, on November 2, 2018, after Ra Medical's IPO had already closed, Mr. Geiger contacted a banking partner and once again falsely asserted that physicians would face legal liability for using the device and/or seeking reimbursement.

**Impact on Ra Medical's IPO**

**39.**     Ultimately, Mr. Geiger's communications to UBS and OppenheimerFunds had their intended effect, including but not limited to the adverse impacts described below.

**40.**     In or around June 2018, UBS and OppenheimerFunds declined to participate in the IPO, and UBS terminated its engagement to serve as Ra Medical's lead bookrunning manager.  The loss of two of Ra Medical's five banks, including its lead bank, so late in the process, dramatically and negatively impacted the pending IPO. First, the change meant that Ra Medical's IPO could not go forward as planned in July 2018.  Ra Medical scrambled to find alternative banks to lead the IPO, and those banks then had to complete their own due diligence.  By necessity, this meant that the IPO slipped into fall 2018, ultimately closing on October 1, 2018.  By then, the historic IPO market had passed, as most available investment funds had already been committed.

**41.**     In addition, the loss of these banks late in the process generally undermined the market's confidence in Ra Medical as an investment.  For investors who UBS and OppenheimerFunds had already contacted, urging their investment in the IPO, the sudden absence of these banks signaled, incorrectly, that Ra Medical was not a sound investment.  For other buyers, even if they had not been directly contacted by UBS and Oppenheimer, the mere fact that these banks bowed out suggested that there was a fundamental problem with the IPO.

**42.**     Having suffered the extensive delay caused by Mr. Geiger's misconduct, Ra Medical's IPO went forward on September 26, 2018.  Shortly thereafter, the stock market suffered serious losses, including record losses during the month of October 2018.  During this period, Ra Medical was in a legally mandated "quiet period" and could not communicate with investors during this difficult time in the market.  Its shares subsequently decreased in value, causing many initial investors to abandon their Ra Medical shares.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

**43.**  The damage caused by Mr. Geiger's false statements was thus compounded – Ra Medical lost two of its key investment banks, undermining market confidence and delaying its IPO unreasonably, and then suffered in a declining market in which it should never have found itself but for the Defendants' malicious and intentional acts.

**44.**  Moreover, Defendants' disparaging, false and misleading statements to research analysts may have negatively impacted their views of Ra Medical and their resulting reports.

**45.**  As a result, Ra Medical suffered significant damages, including a reduction in its initial IPO offering and decreased valuations in its shares thereafter.

### Strata Starts Campaign to Mislead Ra Medical's Customers

**46.**  Strata has more recently launched a campaign of false and misleading statements specifically directed to Ra Medical's customers, intending to harm Ra Medical's reputation within the marketplace and scare away new and existing customers.  These communications are ongoing.

**47.**  Specifically, in a series of letters to Ra Medical's customers, doctors who have purchased Ra Medical's Pharos laser system and use it treat vitiligo, Strata falsely asserted that their advertisements of the Pharos system constitute infringement of Strata's exclusive patents.  As recently as June 10, 2019, Strata continued and intensified its misinformation campaign, demanding that doctors immediately cease advertising the Pharos lasers, which it claimed infringes Strata's licensed patents to treat vitiligo using a particular method covered by the patents.  *See* Exhibit C.

**48.**  These are the same patents previously held by PhotoMedex and the same infringement claims expressly and irrevocably released as part of the Settlement Agreement.  Yet Strata's letter is devoid of any reference to this release, or its inability to bring such claims against Ra Medical or its physician customers using the Pharos laser.

Cooley LLP
Attorneys At Law
San Diego

11.

Second Amended Complaint
Case No. 19-cv-00920-AJB-MSB

49.     By communicating to Ra Medical's customers that their promotion of the Pharos system may infringe Strata's exclusive license, despite the release of these very claims in 2011, Strata is falsely and misleadingly implying that Ra Medical faces impending patent infringement claims from Strata.   Similarly, the letter falsely and misleadingly implies that these customers may be liable for infringement.   But these are downstream claims that are also prohibited by the Settlement Agreement.

50.     To date, Ra Medical is aware of numerous customers who have received these communications.   These customers represent some of the most prolific and influential users of the Pharos system.   Similar communications may, and likely have, gone to other Pharos purchasers.

51.     Strata's false and misleading statements have had their intended effect. Upon receipt of the letters, customers immediately expressed concern regarding potential legal repercussions.   Some customers have asked Ra Medical to indemnify them against potential legal actions by Strata.

52.     As a result, Ra Medical has suffered damage to its reputation among its physician customer base and potential lost sales.

## COUNT I

### BREACH OF THE SETTLEMENT AGREEMENT
### (AGAINST ALL DEFENDANTS)

53.     Ra Medical incorporates by reference all of the preceding allegations set forth above as if fully set forth herein.

54.     In 2011, Ra Medical and PhotoMedex entered into the Settlement Agreement.   *See* Exhibit A.   Subsequently, as part of its purchase of PhotoMedex's laser assets, on information and belief, Mela assumed the responsibilities in that Settlement Agreement.   Mela is now Strata, a successor in interest to the asset purchase and the responsibilities assumed therein.   The Settlement Agreement prohibits disparaging statements regarding the FDA status of certain Ra Medical lasers, as well as false marketing known to be untrue.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

55.     Mr. Geiger, on behalf of Strata and as Managing Partner of Accelmed, breached these provisions by disparaging Ra Medical's FDA clearances, suggesting to banking partners that the DABRA system works in only 10% of cases, that physicians may face legal liability for using the laser outside of Ra Medical's FDA clearance, and/or that reimbursement from government payors for treatments outside of the FDA clearance may be improper.  Moreover, Mr. Geiger falsely implied that Strata and/or Mount Sinai were pursuing patent claims against Ra Medical for its Pharos laser. Similarly, Strata's recent statements to Ra Medical's customers falsely imply that it can pursue patent infringement claims against Ra Medical and its customers.

56.     These statements violate the prohibition on statements relating to the FDA status of Ra Medical's lasers, as the DABRA system uses the same core excimer technology at issue in the prior litigations and Mr. Geiger is mischaracterizing the scope of the FDA clearance for DABRA.  Moreover, Mr. Geiger's and Strata's false and misleading assertions on these issues, including assertions of a potential patent action by Strata, to Ra Medical's prospective banking partners, the investing community at large, and Ra Medical's customers, constitutes false marketing known to be untrue.  As a result, Defendants are in breach of Section 7 of the Settlement Agreement.

57.     Defendants' breaches harmed Ra Medical, causing in whole or in part, UBS, OppenheimerFunds, and other banking partners to abandon the IPO and causing harm to Ra Medical's reputation among its customers.  Even were that not so, harm is presumed where a party breaches the Settlement Agreement's non-disparagement provisions, under the express terms of the Settlement Agreement.

## COUNT II

LANHAM ACT, SECTION 1125(A), FALSE ADVERTISING, SECTION 43(A)(1)(B)

(AGAINST STRATA)

58.     Ra Medical incorporates by reference all of the preceding allegations set forth above as if fully set forth herein.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

**59.** Strata and Ra Medical are direct competitors in the excimer laser market, both producing and marketing laser system to physicians for the treatment of vitiligo.

**60.** Strata's letters to Ra Medical's customers, physicians who have purchased the Pharos laser system, contain false and misleading statements, implying that Strata has actionable claims for patent infringement against Ra Medical and actionable patent infringement claims against the doctors. Neither is true, because among other reasons, any such claims were expressly and irrevocably released as part of the Settlement Agreement.

**61.** Because Strata is bound by the Settlement Agreement and the release, and knows such claims are unenforceable against Ra Medical or its customers, these letters were not only false and misleading, but were sent in bad faith and total disregard of the terms of the Settlement Agreement.

**62.** These misleading letters are commercial advertisements sent to potential Strata customers – physicians who presently utilize excimer lasers to treat vitiligo among their patient population. They attempt to dissuade those customers from continuing their use of Ra Medical's laser system, by implying any promotion of those systems constitutes patent infringement, and thereby imply physicians must switch to Strata's XTRAC system if they wish to continue promoting their treatment of vitiligo.

**63.** Strata's false communications are having the very effect Strata intended, deceiving doctors into believing that both they and Ra Medical face serious legal threats for promoting their use of Ra Medical's Pharos laser. Influential customers have reached out to Ra Medical, expressing dismay at the potential legal repercussions they believe that they now face due to purchase of the Pharos laser.

**64.** These letters have been sent nationwide, from Strata's headquarters in Pennsylvania to doctors from California to New Jersey.

**65.** As a result, Ra Medical has suffered significant harm. In addition to reputational harm as a result of these false statements, causing customers to question the integrity of Ra Medical's products and services, several customers have demanded

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO
14.
SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

indemnity against any legal actions brought by Strata. These issues threaten Ra Medical financially, due to the potential legal costs for any defenses and the potential that such customers will never make another purchase. They also reflect significant harm to the company's reputation, harm that is ongoing and may be irrevocable.

## COUNT III

### INTENTIONAL INTERFERENCE IN CONTRACTUAL RELATIONS

### (AGAINST ALL DEFENDANTS)

**66.** Ra Medical incorporates by reference all of the preceding allegations set forth above as if fully set forth herein.

**67.** Ra Medical contracted with UBS to serve as the lead bookrunning manager through the IPO process, a contract that was still in place in spring 2018 when Mr. Geiger, on behalf of Accelmed and Strata, began making disparaging, false and misleading statements regarding Ra Medical to UBS and/or threatening to withhold future business from UBS if the bank participated in the IPO.

**68.** On information and belief, Mr. Geiger on his own behalf and on behalf of Accelmed and Strata, was aware of this contract, as such engagements are standard in an IPO process and Mr. Geiger is well acquainted with the norms for such offerings.

**69.** Defendants' actions disrupted UBS's performance as the lead bookrunning manager for the IPO and eventually caused the termination of UBS's contract with Ra Medical.

**70.** Defendants intended and advocated for this result, as Mr. Geiger specifically pointed to UBS's involvement in Ra Medical's IPO as the reason for his communications, implying that the issues he was raising would create liability for UBS and impact its brand. At the very least, Defendants knew the disruption to UBS's performance was certain or substantially certain to occur.

**71.** As a result of this interference, Ra Medical was harmed by disruption of its relationship with UBS, delay in its IPO offering, damage to its reputation in the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

market, all of which ultimately contributed to a reduction in its initial IPO offering and decreased valuations in its shares thereafter.

72.    Defendants' disparaging, false and misleading statements were a substantial factor in UBS's decision not to participate in Ra Medical's IPO and to terminate their role as the lead bookrunning manager and the resulting harm therein.

## <u>COUNT IV</u>

### INTENTIONAL INTERFERENCE IN PROSPECTIVE ECONOMIC RELATIONS
### (AGAINST ALL DEFENDANTS)

73.    Ra Medical incorporates by reference all of the preceding allegations set forth above as if fully set forth herein.

74.    Ra Medical was partnering with select financial entities as part of its IPO offering, including investment bank UBS as the lead bank and OppenheimerFunds as a member of the syndicate. These partners offered deep expertise in medical device IPOs, and Ra Medical stood to benefit from this expertise and having the company go through a successful and seamless IPO process.

75.    Mr. Geiger, on his own behalf and on behalf of Accelmed and Strata, knew that Ra Medical intended to partner with these third parties as part of the underwriting syndicate for Ra Medical's IPO. For example, Mr. Geiger specifically referenced UBS's role as a potential underwriter in his May email to UBS. He similarly, on information and belief, reached out to OppenheimerFunds and communicated his displeasure with their role in the Ra Medical IPO.

76.    Mr. Geiger, on his own behalf and on behalf of Accelmed and Strata, made disparaging, false and misleading statements regarding Ra Medical to these banking partners.

77.    On information and belief, Mr. Geiger made similar communications to many other banks considering participation in the IPO.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

78.     These communications were false and misleading and also breached the non-disparagement provisions in the Parties' Settlement Agreement, provisions which bound Defendant Strata and Mr. Geiger as Strata's agent.

79.     Mr. Geiger, on his own behalf and on behalf of Accelmed and Strata, made these communications in order to disrupt Ra Medical's relationship with its banking partners, including UBS and OppenheimerFunds, or knew that disruption of those relationships was certain or substantially certain.

80.     He succeeded, as UBS and OppenheimerFunds both withdrew from the IPO, at least in part due to Mr. Geiger's disparaging statements and false and misleading implications regarding Ra Medical's actions.

81.     As a result of this interference, Ra Medical was harmed by disruption of its relationship with UBS and OppenheimerFunds, the delay in its IPO offering, damage to its reputation in the market, and ultimately, a reduction in its initial IPO offering and decreased valuations in its shares thereafter.

82.     Defendants' disparaging, false and misleading statements were a substantial factor in these banking partner's decisions not to participate in Ra Medical's IPO and the resulting harm therein.

83.     Ra Medical has ongoing economic relationships with the physicians which purchase, use and promote its Pharos laser system.  These customers may be repeat customers, as new systems are developed, and also promote Ra Medical's products through their practices and their professional networks, generating potential new customers for Ra Medical.

84.     Strata is aware of this relationship, as it competes for the same physician customer base for its XTRAC laser system.

85.     Strata made false and misleading statements to these customers in a series of letters, implying that Strata has patent infringement claims against Ra Medical and its customers.

Cooley LLP
Attorneys At Law
San Diego

17.

Second Amended Complaint
Case No. 19-CV-00920-AJB-MSB

**86.** These communications were false and misleading, as Strata released all such claims, as to Ra Medical and its Pharos customers, as part of the Settlement Agreement.

**87.** The letters have disrupted Ra Medical's relationship with its customers, causing concern and dismay that the customers may face legal liability because they use and promote the Pharos system.

**88.** As a result of this interference, Ra Medical's relationship with these customers and its reputation on the market have been damaged.

**89.** Strata's false and misleading statements were the sole and direct cause of this harm.

### **COUNT V**
#### TRADE LIBEL
#### (AGAINST ALL DEFENDANTS)

**90.** Ra Medical incorporates by reference all of the preceding allegations set forth above as if fully set forth herein.

**91.** Mr. Geiger's comments about Ra Medical, made on his own behalf and on behalf of Accelmed and Strata, disparaged the company's business and accused Ra Medical of acting improperly, including inducing physicians to pursue improper government payments and patent infringement. This disparaged both Ra Medical's services to their physician customers and the quality of their laser products. These statements, alone and in combination, portrayed Ra Medical as an unscrupulous actor whose IPO could hurt prospective banking partners and investors.

**92.** These statements were made to UBS and, on information and belief, to OppenheimerFunds and other financial partners.

**93.** These statements were false and misleading, as described above.

**94.** Mr. Geiger knew that these statements were untrue or acted with reckless disregard for the truth or falsity of his statements. For instance, Mr. Geiger would have been aware that Strata no longer held patent infringement claims against Ra Medical

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

due to the prior releases contained in the Settlement Agreement and that Mount Sinai, PhotoMedex's licensing partner since 2006, has not pursued any potential patent claims against Ra Medical. Moreover, as the managing partner of Accelmed, an owner of a vascular laser product produced by Eximo, Mr. Geiger would have known that physicians can seek reimbursement for treatment regardless of the devices utilized therein, and that they can, in appropriate circumstances elect to use devices beyond their FDA clearance. Mr. Geiger would also know that Ra Medical's clearance means that its DABRA laser system can be used to treat peripheral vascular disease and that physicians may determine, on that basis, to use it in a variety of treatments commonly referred to as atherectomy.

95. Mr. Geiger knew and intended that his disparaging statements would be relied on, and that UBS, OppenheimerFunds and other financial partners would believe his assertions and refuse to participate in Ra Medical's IPO. There was no other reason for his broad campaign against Ra Medical.

96. As a result, Ra Medical suffered a reduction in its initial IPO offering and decreased valuations in its shares thereafter.

97. Defendants' disparaging, false and misleading statements were a substantial factor in causing these partners not to participate in Ra Medical's IPO and the resulting harm therein.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants as follows:

A. An order adjudging that Defendants breached Section 7 of the Settlement Agreement via Mr. Geiger's and Strata's communications to banking partners, investors, and Ra Medical's customers and awarding all available damages and relief;

B. An order adjudging that Strata violated the provisions of 15 U.S.C. § 1125(a) by making false or misleading representations of fact about potential patent claims related to the Pharos laser system;

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB

C.     An order permanently enjoining Strata and all of its respective affiliates, officers, agents, representatives, employees, attorneys and all other persons acting in concert with them from making, or inducing others to make, any false, misleading or deceptive statement, including about potential patent claims related to the Pharos laser system;

D.     That Strata be ordered to correct any erroneous impression persons may have derived concerning potential patent claims against Ra Medical or its customers;

E.     That Ra Medical be awarded its damages and/or Strata's profits, or such sum as the Court shall find to be just, pursuant to 15 U.S.C. § 1117(a), and that such damages be trebled and awarded to Ra Medical and that it be awarded its costs, attorneys' fees and expenses, as a result of Strata's willful, intentional and deliberative acts in violation of the Lanham Act;

F.     An order adjudging that Defendants committed intentional interference with contractual relations and awarding all available damages and relief;

G.     An order adjudging that Defendants committed intentional interference with prospective economic relations and awarding all available damages and relief;

H.     An order adjudging that Defendants committed trade libel and awarding all available damages and relief;

I.     For Plaintiff's costs and attorneys' fees incurred in prosecuting the breach of the Settlement Agreement, as provided for under Section 19 of that Settlement Agreement;

J.     For prejudgment interest;

K.     For such other and further relief as this Court deems just and proper.

Dated:   July 25, 2019                      COOLEY LLP

                                            By:/s/ Michael A. Attanasio
                                               Michael A. Attanasio
                                               M. Ray Hartman III
                                               Megan Donohue

                                            *Attorneys for Plaintiff*
                                            *Ra Medical Systems, Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

SECOND AMENDED COMPLAINT
CASE NO. 19-CV-00920-AJB-MSB